UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Michael Fruge, et al | Civil Action No. 07-789 |
| versus | Judge Tucker L. Melançon |
| Ulterra Drilling Technologies, L.P., et al | Magistrate Judge Hanna |

**MEMORANDUM RULING**

Before the Court are defendant, Chubb Custom Insurance Company's ("Chubb") Motion for Summary Judgment [Rec. Doc. 65], defendant, Amerisure Mutual Insurance Company's ("Amerisure") Memorandum in Opposition [Rec. Doc. 76], and Chubb's Reply [Rec. Doc. 98]; Amerisure's Cross-Motion for Summary Judgment and/or Declaratory Judgment [Rec. Doc. 78], Chubb's Memorandum in Opposition [Rec. Doc. 88], Amerisure's Reply [Rec. Doc. 98], plaintiffs, Michael J. Fruge ("Fruge") and Liliana Fruge's (collectively "plaintiffs"), Memorandum in Opposition to Amerisure's Motion for Summary Judgment [Rec. Doc. 89], and Amerisure's Reply [Rec. Doc. 95].[1] For the reasons that follow, Chubb's Motion for Summary Judgment [Rec. Doc. 65] will be granted and Amerisure's Cross-Motion for Summary Judgment and/or Declaratory Judgment [Rec. Doc. 78] will be denied.  For the foregoing reasons, Amerisure's Motion to Dismiss [Rec. Doc. 70] and Chubb's Motion to Strike [Rec. Doc. 71] will be denied as moot.

---

[1] Also before the Court are Amerisure's Motion to Dismiss, *R. 70,* Chubb's Memorandum in Opposition and Motion to Strike *R. 72, 71*, Amerisure's Reply and Memorandum in Opposition to Chubb's Motion to Strike *R. 82, 74*, and Chubb's Supplemental Memorandum *R. 101*.  Amerisure requested in its Opposition to Chubb's Motion to Strike that its Motion to Dismiss be combined with its Motion for Summary Judgment.  *R. 78*.  The Court will therefore consider Amerisure's motions together.

## I.  BACKGROUND

This case arises out of a claim for personal injuries allegedly sustained by Fruge while employed by Nabors Drilling USA, Inc. ("Nabors") as a driller, assigned to work on a land based drilling rig operated by Nabors and Ulterra MWD, L.P. ("Ulterra MWD").  Fruge claims that on August 5, 2006, he suffered "career-ending injuries" when an MWD nipple and sensor exploded from the stand pipe manifold and violently struck him. *R. 89, p. 2*.

Plaintiffs filed their Complaint on May 2, 2007, seeking damages for injuries resulting from the accident. *R. 1, ¶VIII*.  As defendants, plaintiffs named Ulterra Drilling Technologies, L.P. ("Ulterra Drilling"), and Ulterra MWD alleging that each is liable for the damages incurred as a result of the accident.[2] *R. 1, ¶IX*.  Plaintiffs filed a Second Supplemental and Amending Complaint[3] on November 21, 2007, adding Chubb, Nautilus Insurance Company[4] and Amerisure.

On November 5, 2005, Chubb issued two insurance policies to Ulterra MWD:  (1) # 7954-96-82, providing commercial general liability coverage up to $1,000,000 per occurrence effective from November 2005 to November 2006 (the "Chubb CGL policy"); and (2) # 7954-96-83, providing umbrella coverage to Ulterra MWD up to $5,000,000 per

---

[2] On June 8, 2007, the Court issued a Partial Judgment of Dismissal, *R. 9*, dismissing Ulterra Drilling pursuant to plaintiffs' 41(a) Notice of Dismissal, *R. 8*.

[3] Plaintiffs filed a First Supplemental and Amending Complaint on May 10, 2007, naming Maverick Directional Services, Ltd. ("Maverick") as an additional defendant; however, plaintiffs' claims against Maverick were dismissed with prejudice by the Court's Judgment of October 28, 2009. *R. 96*.

[4] Nautilus Insurance Company provided liability coverage to Maverick during the period in which Fruge was allegedly injured.  The Judgment of Dismissal terminating Maverick also dismissed Nautilus Insurance Company. *R. 96*.

occurrence with a coverage period of November 2005 to November 2006 (the "Chubb umbrella policy")(collectively the "Chubb policies").[5]  *R. 66, Exh. E, F.*

On December 30, 2005, Ulterra Drilling obtained two policies of insurance:  (1) a policy from Amerisure (#CPP 2034223) which included general commercial liability coverage to Ulterra Drilling from December 31, 2005 to December 31, 2006, with policy limits of $1,000,000 per occurrence (the "Amerisure CGL policy"); and (2) a policy from Amerisure (# CU2026199) which provided umbrella coverage to Ulterra Drilling up to $10,000,000 per occurrence from December 31, 2005 to December 31, 2006 (the "Amerisure umbrella policy")(collectively, the "Amerisure policies").  *See generally R. 66, Exh. A, B; R. 76-5.*  Each of the Amerisure policies included an endorsement providing coverage to Ulterra MWD as an insured. *Id.*  In Endorsement A, "Named Insured Endorsement," the declarations page was amended to include  Ulterra MWD as a named insured for policy # CPP203423, the Amerisure CGL policy. *R. 66, Exh. A; R. 76-5.*  Similarly, the declaration page for policy # CU2026199, the Amerisure umbrella policy, was amended by a "Named Insured Endorsement" to include Ulterra MWD as a named insured.  *R. 66, Exh. B.*

The record reflects that Chubb and Amerisure originally agreed to share in the defense of Ulterra MWD as the alleged insurers and entered into a cost-sharing agreement on or about May 23, 2007, specifying that they would share the costs of defense of Ulterra MWD

---

[5] Ulterra MWD applied for the Chubb policies through its insurance broker, William Rigg Company, and insurance brokerage and risk management firm. *R. 78, Exh. 2 Affidavit of Cameron Jones.*

as co-insurers. *R. 88, Exh. 1, ¶ 5 Affidavit of Richard Rogers.*[6] Subsequently, by letter dated October 19, 2007, Amerisure informed Chubb's Senior Litigation Examiner that it was withdrawing its agreement to defend Ulterra MWD in the underlying lawsuit, as the policies listing Ulterra MWD as a named insured did not provide commercial general liability or umbrella coverage to Ulterra MWD. *R. 66, Exh. D.* Thereafter, on November 21, 2007, Chubb filed an Answer to the Second Supplemental and Amending Complaint and a cross-claim against Amerisure. *R. 31.* In its cross-claim, Chubb seeks a declaration that Amerisure owes coverage and defense to Ulterra MWD under the relevant policies, recognition of Amerisure's obligation to defend and indemnify Ulterra MWD, and reimbursement of monies expended by Chubb in defense of the insured. *Id.*

Chubb and Amerisure have filed Cross-Motions for Summary Judgment arguing that they are not the primary insurers for this accident. *R. 65, 78.* Chubb seeks a summary judgment declaring that Amerisure must provide a defense for Ulterra MWD in the underlying litigation, contending that Amerisure has a duty to defend because Ulterra MWD is named as an insured on each of the Amerisure policies. *R. 65.* Further, Chubb asserts that any coverage owed to Ulterra MWD is in excess of that provided by the Amerisure polices. *Id.* Amerisure opposes Chubb's motion and moves for a declaration that Chubb is the primary and singular insurer of Ulterra MWD, alleging that there is no coverage owed under the Amerisure policies as the inclusion of Ulterra MWD is the result of a clerical error on the

---

[6] Richard Rogers attests that he is Senior Litigation Examiner for Chubb & Son, a division of Federal Insurance Company. *R. 88-2, Exh. 1, p. 1.*

part of Amerisure's insurance broker, William Rigg Company.[7] *R. 78.* In support, Amerisure has submitted the affidavits of Ronald F. Thomason ("Thomason"), chief financial officer of Ulterra MWD and Ulterra Drilling, Cameron Jones ("Jones"), insurance broker and Vice President of William Rigg Company, and Terry Steadman ("Steadman"), Senior Marketing Underwriter for Amerisure, in support of its contention that Ulterra MWD was only mistakenly included on the policies. *R. 76, Exh. 1, 2, 3.* Additionally, Amerisure directs the Court to the Amendments made to the policies "effective December 31, 2005" deleting Ulterra MWD as an insured, subsequent to uncovering the alleged error. *Id.*

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994) (en banc). Initially, the party moving for summary judgment

---

[7] Cameron Jones, a broker with William Rigg Company, stated in his affidavit that he placed insurance coverage for Ulterra MWD with Chubb, not Amerisure and that he later discovered, after plaintiff filed this claim, that Ulterra MWD was mistakenly added as a named insured on the Amerisure policies. Specifically, he attested to the following:

> In December of 2005, at the request of Mr. [Ronald] Thomason, a primary and umbrella general liability insurance policy was obtained for [Ulterra] Drilling from Amerisure...The Amerisure general liability policy was only intended to insure [Ulterra] Drilling and not [Ulterra] MWD, as [Ulterra] MWD was separately insured under the Chubb policy. When [the companies] received notice of the Fruge claim, I reviewed the insurance policies and discovered that [Ulterra] MWD had been mistakenly added as a named insured under the Amerisure [policy] issued to [Ulterra] Drilling. . . . Neither [Ulterra] MWD nor [Ulterra] Drilling paid any premiums to Amerisure for the purpose of adding [Ulterra] MWD as a named insured under the Amerisure policy. The addition of [Ulterra] MWD to [Ulterra] Drilling's general liability policy was the result of a clerical mistake made by Amerisure.

*R. 76, Exh. 3, ¶¶ 15-17.*

must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id*. If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial. *Id*. at 322-23.[8] Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp*., 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence

---

[8] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp*., 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the nonmoving party of these essential elements renders all other facts immaterial. *Id.* at 322.

favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed.R.Civ.P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. LAW AND ANALYSIS

*A. Chubb and Amerisure's Cross-motions for Summary Judgment*

Chubb seeks a summary judgment declaring that Amerisure must provide a defense for Ulterra MWD in the underlying lawsuit. Chubb contends that Amerisure issued a CGL and umbrella insurance policy, covering Ulterra MWD as an insured, providing full and complete coverage to Ulterra MWD for all of plaintiffs' claims. Chubb maintains that any coverage afforded under the Chubb policies is in excess to that provided by the Amerisure commercial general liability and umbrella policies. Amerisure argues that Chubb's requested summary judgment is improper. Amerisure submits that Ulterra MWD is not an insured under the CGL policy because Ulterra MWD was listed on the Endorsements page by

mistake, the result of a clerical error, and the policies have since been reformed to correct the error. Accordingly, Amerisure has filed an opposition as well as a cross-motion for summary judgment seeking to have Chubb declared as primary insurer under its policies with Ulterra MWD.

*1. Standing Issue*

In Amerisure's cross-motion for summary judgment, it argues that Chubb lacks standing to assert its cross-claim against Amerisure, as Chubb is not a party to the insurance contract between Amerisure and Ulterra Drilling. *R. 78, p. 27.* Specifically, Amerisure argues that Chubb has no insurable interest under the policy, has no right to assert a claim for breach of contract, nor does it have a right to demand insurance coverage under a contract to which it is not a party. *Id.* Thus, Amerisure alleges that Chubb has "no standing to demand payment to [Ulterra] MWD under an insurance contract that was issued to a third party." In support, Amerisure points to Louisiana jurisprudence dictating that "under Louisiana law a claimant must possess an insurable interest in a claim under the policy in question in order to recover on an insurance policy covering the claim." *Id.* at 29; *See generally Young v. State Farm Fire & Casualty Ins. Co.,* 426 So.2d 636 (La.App. 1 Cir. 1982) *writs denied,* 433 So.2d 148, 171 (La. 1983). In response, Chubb argues that Louisiana law recognizes its right of action against Amerisure under the equitable doctrine of contribution, as they are both solidary obligors, bound by their obligation to Ulterra MWD, a mutual insured. Additionally, Chubb alleges that the "other insurance" clauses in the

8

policies provide it with a separate right and cause of action against Amerisure. The Court agrees. *See generally Great Southwest Fire Ins. Co. v. CNA Ins. Cos.,* 557 So.2d 966, 968-69 (La. 1990)(finding insurers of mutual insured to be solidarily liable for the damages incurred by the insured); *Graves v. Traders & General Ins. Co.,* 214 So.2d 116, 119 (La. 1968)(holding each insurer liable in proportion to respective limits under the policies).[9]

   2.*Coverage under the Amerisure Policies*

The declarations page of the Amerisure CGL policy refers to Endorsement A, which is entitled "Named Insured Endorsement." Endorsement A provides, in pertinent part:

> The Named Insured and Mailing address portion in the Declarations are amended to read as follows:
>
> ULTERRA DRILLING TECHNOLOGIES, INC
> ROCKBIT HOLDINGS INC.
> RBI GP, LLC
> ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC
> ULTERRA MWD, LP

*R. 66, Exh. A; R. 76-5, Amerisure CGL Policy.* Similarly, under the Amerisure umbrella policy, and the attached endorsement, entitled "Named Insured Endorsement," the policy specifies that the endorsement modifies the umbrella liability policy by providing the following:

---

[9] Counsel for Chubb points out, and the Court agrees, that the cases cited by Amerisure in support of its argument that Chubb lacks legal standing are clearly distinguishable from the case at bar. Specifically, the cases cited by Amerisure involve outside individuals, such as a victim attempting to bring suit against another party's insurance company. The plaintiffs' claims were dismissed because they were not a proper party as the insurance contract is between the insured and insurer, not the plaintiff and insurer. In the present case, the Court is faced with a defendant co-insurer's cross-claim against another defendant co-insurer based on the subrogation rights granted by the "other insurance" clauses in the respective policies.

    The Named Insured in ITEM 1 of the Declarations is amended to read as follows:

    ULTERRA DRILLING TECHNOLOGIES, INC
    ROCKBIT HOLDINGS INC.
    RBI GP, LLC
    ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC
    ULTERRA MWD, LP

*R. 66-2, Exh. B, Amerisure Umbrella policy.*

"Under Louisiana law,[10] '[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)). An insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship. La.Civ.Code art.1983. As such, courts are guided by certain principles of construction and should interpret insurance policies the same way they do other contracts by using the general rules of contract interpretation. *See generally Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc.*, 958 So.2d 634 (La. 2007); *Ledbetter v. Concord Gen. Corp.*, 665 So.2d 1166, 1169 (La.1996); *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736 (La. 1994). The purpose of

---

[10] The parties agree that Louisiana law governs the interpretation of the insurance policies. This action was filed in the Western District of Louisiana pursuant to federal diversity. *See* 28 U.S.C. § 1332. Accordingly, the Court must apply the substantive law, including the conflict-of-law rules, of the forum state Louisiana. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under the Louisiana choice-of-law regime, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract. *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir.1999).When there is no conflict, no conflict-of-law analysis is necessary, and the forum law applies. *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir.2005). Thus, we apply the forum law of Louisiana.

liability insurance is to afford the insured protection from damage claims. Insurance contracts, therefore, should be interpreted to effect, not deny, coverage. *Yount v. Maisano*, 627 So.2d 148, 151 (La.1993). The extent of coverage is determined from the intent of the parties as reflected by the words of the insurance policy. *Ledbetter*, 665 So.2d at 1169. The role of the judiciary in interpreting insurance contracts is to ascertain the common intent of the insured and insurer as reflected by the words in the policy. La.Civ.Code art.2045; *Ledbetter*, 665 So.2d at 1169. An insurance contract must be construed according to the entirety of its terms and conditions as set forth in the policy. La.Rev.Stat. Ann. § 22:881 (2009). "The words of a contract must be given their generally prevailing meaning." La.Civ.Code Ann. art. 2047 (2008). When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent. La.Civ.Code art. 2046; *Herbert v. Webre*, 982 So.2d 770, 773 (La. 2008).

From a clear reading of the Amerisure policies, it is evident that both the CGL and the umbrella policies expressly cover Ulterra MWD as an insured. *See R. 66, Exh. A; R. 76-5; R. 66, Exh. B*. Chubb argues that because Ulterra MWD is an insured under each of the policies, Amerisure owes a duty to defend and indemnify Ulterra MWD "up to and inclusive of all limits provided in the primary and umbrella policies." *R. 65*. Amerisure responds, arguing that Ulterra MWD was improperly listed as an insured on the Endorsement pages appended to the Amerisure policies. *R. 76*. In support, Amerisure has filed the affidavits of

11

Thomason, Jones and Steadman, stating that Ulterra MWD was never an intended insured under the Amerisure policies as no premiums were paid by or for Ulterra MWD, and no application for insurance was submitted by Ulterra MWD. *R. 76, Exh. 1, 2, 3 Affidavits of Thomason, Jones and Steadman.* Chubb has moved to strike the affidavits, alleging that they constitute impermissible parol evidence. Amerisure submits that it was Chubb, not Amerisure, that issued primary and excess policies to Ulterra MWD in exchange for the payment of premiums. Amerisure argues that "[n]either MWD nor Drilling applied for any type of liability insurance from Amerisure to insure MWD. . .[t]here are no applications . . .[or] evidence of any payment by MWD or Drilling to Amerisure for Amerisure to insure MWD."[11] Cameron Jones, the insurance broker employed by William Rigg Company, testified that he, at the request of Ulterra Drilling, applied for liability insurance coverage from Amerisure to provide liability insurance coverage for Drilling only, and in accordance with Ulterra Drilling's application, Amerisure calculated the premiums to be paid by Ulterra Drilling based on the nature of Ulterra Drilling's business and the risks described therein. [2] Amerisure adds that the error was subsequently corrected **on a policy change form stating an effective date of** December 31, 2005, when Ulterra MWD was deleted from the policies with the mutual consent of all parties. *R. 76, Exhs. 1, 2, 3; R. 76-4, Exh. 3.* Conversely,

---

[11] The affidavits of Ronald Thomason, CFO for Ulterra Drilling and Ulterra MWD, and Cameron Jones, the insurance broker, attest that MWD intended to obtain primary and excess comprehensive general liability insurance coverage from Chubb alone. *R. 76, Exhs. 1, 2.*

[12] Amerisure contends that Ulterra Drilling is a manufacturer of drill bits, and as such is not engaged in the potentially hazardous work that a drilling company, like Ulterra MWD would encounter on a day-to-day basis. *R. 76, p. 11.*

Chubb argues that the deletion is nothing more than an impermissible attempt at reformation by Amerisure.

*3. Contract Interpretation and Reformation under La. R.S. 22:1262*

"In general, under Louisiana law, extrinsic evidence cannot be used to 'negate or vary' the unambiguous terms of a written contract. *See Patterson v. City of New Orleans*, 686 So.2d 87, 90 (La.App. 4 Cir.,1996). 'When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.' La. Civ.Code Ann. art.2046; *see also Steier v. Heller*, 732 So.2d 787, 792 (La.App. 2 Cir.,1999) ('When the terms of a written contract are clear, unambiguous, and lead to no absurd consequences, parol evidence cannot be used to vary or explain the contract terms, and the parties' meaning or intent must be determined from the four corners of the contract'); *Patterson*, 686 So.2d at 90. Only where a contract is ambiguous can a court base its interpretation on extrinsic evidence. *See Id.* A contract is ambiguous only if its terms are unclear or susceptible to more than one interpretation, or the intent of the parties cannot be ascertained from the language employed. *See McDuffie v. Riverwood Int'l Corp.*, 660 So.2d 158, 160 (La.App. 2 Cir.,1995)." *Gebreyesus v. F.C. Schaffer & Associates, Inc.*, 204 F.3d 639, 643 (5th Cir. 2000).

In the present case, the Amerisure policy unambiguously designates Ulterra MWD as an insured under the policy. *R. 66, Exh. A.* Given the clarity of the insurance policies, Amerisure and Ulterra MWD's subjective intent is wholly irrelevant. "[W]here extrinsic

evidence of intent was introduced for the purpose of divesting persons qualifying as an insured of their rights under the express terms of the policy [extrinsic evidence should not be considered]." *Washington v. Savoie,* 634 So.2d 1176, 1179 (La.1994); *See American Electric Power Company v. Affiliated FM Insurance Company,* 556 F.3d 282 (5th Cir. 2009) (citing *Washington,* 634 So.2d at 1179). Because the named insureds under the policies are clear from the face of the insurance policies, the Court will not consider extrinsic evidence of intent in order to determine the named insureds under the policies. Thus, finding no ambiguity in the policies, the Court will enforce the Amerisure policies as written: as providing commercial general liability and umbrella coverage to Ulterra MWD.

Alternatively, Amerisure requests that the Court reform the Amerisure policy to match the intent of Ulterra MWD and Amerisure as their being named as an insured under the policy was merely a clerical error. "Under Louisiana law, a party may reform a written instrument that does not reflect the true intent of the contracting parties. *Valhi Inc. v. Zapata Corp.*, 365 So.2d 867, 870 (La.App., 1978). Reformation is an equitable remedy designed to correct an error in the contract. *Id.* The error 'must be mutual', *see, e.g., Pat S. Todd Oil Co. v. Wall*, 581 So.2d 333, 336 (La.App. 3 Cir. 1991); and it must be 'in the drafting of the instrument ... and not in making the contract which it evidences.'" *Illinois Cent. Gulf R. Co. v. R.R. Land, Inc.*, 988 F.2d 1397, 1402 (5th Cir.,1993) (quoting *Phillips Oil Co. v. O.K.C. Corp.*, 812 F.2d 265, 275 (5th Cir. 1987)). "Before an instrument will be reformed, 'there must be clear proof of the antecedent agreement as well as an error in committing it to

14

writing'. *Pat S. Todd Oil Co.*, 581 So.2d at 336. The party seeking reformation must prove mutual error by 'clear and convincing evidence,' and parol evidence is admissible to show 'that the writing does not express the true intent or agreement of the parties.' *First State Bank & Trust Co. v. Seven Gables Inc.*, 501 So.2d 280, 285 (La.App. 1 Cir.1986), *writ denied*, 502 So.2d 103 (La.1987)." *Illinois Cent. Gulf R. Co.* at 1402.

The record establishes that on September 6, 2007, after plaintiff's alleged August 5, 2006 accident, Amerisure issued a "Policy Change" to the Amerisure policies "deleting Ulterra MWD, LP as a named insured" and stating that the policy changes were effective on December 31, 2005. *R. 78-7, Exh. 4; R. 78-8, Exh. 5.* Louisiana Revised Statute 22:1262, previously codified at Section 22:639, specifically prohibits the very action that Amerisure requests this Court take. This statute prohibits an insurance contract from being retroactively annulled by any agreement after an occurrence for which the insured may be liable. Specifically, the statute provides the following:

> No insurance contract insuring against loss or damage through legal liability for the bodily injury or death by accident of any individual, or for damage to the property of any person, shall be retroactively annulled by any agreement between the insurer and insured after the occurrence of any such injury, death, or damage for which the insured may be liable, and any such annulment attempted shall be void.

LSA-R.S. 22:1262. Counsel for Chubb has succinctly summarized the controlling law regarding post-accident reformation resulting in decreased coverage in his briefs to the Court. As exhibited by Louisiana courts, reformation that limits the recovery of a third party tort victim through post-accident invalidation of an instrument is unacceptable. *See Washington*

*v. Savoie*, 634 So.2d 1176, 1180 (La.1994) (refusing to reform a clerical mistake because reformation would limit the recovery of third-party tort victims); *Lewis v. Saucer*, 653 So.2d 1254, 1259 (La.Ct.App.1995) (noting that an "instrument may not be reformed or corrected to the prejudice of third parties who are authorized to rely on the integrity of the instrument"). Similarly, this Court is wary of permitting reformation of a policy post-accident and after the initiation of related legal proceedings, in fear that such action "would encourage bad faith 'cooperation' between an insurer who seeks to avoid payment of claims and a named insured whose premiums are fixed on the basis of its loss experience." *Washington,* 634 So.2d at 1180.  In *Washington*, the court explained that although reformation of a policy provision is valid as between insurer and insured when either party can prove a mistake which does not reflect their mutual intent, public policy precludes reformation of the effective date of coverage when the change adversely affects the rights of persons insured under the policy to recover damages under the coverage provisions before the change. *Id.*

Amerisure's attempts to distinguish *Washington* on the basis that the policy involved therein addressed UM coverage are to no avail.  Amerisure has not submitted, nor has the Court been able to find any case law indicating that the principles of contract interpretation as they apply to CGL and umbrella insurance polices differ in any recognizable way so as to make the pronouncement in *Washington* inapplicable to the case at bar.  Just as permitting corrections of typographical errors in the UM coverage rejections at issue in *Washington* would have been inconsistent with prior jurisprudence and the purpose of UM coverage,

16

allowing Amerisure to engage in after-the-fact reformation having the practical result of less coverage[13] to an injured third party would invite insurers to engage in unsavory practices as a means of avoiding liability.

### B. Ranking the Policies

### I. CGL policies

Having determined that the Amerisure policies are enforceable and provide coverage to Ulterra MWD, the Court must address the issue of ranking.  The Amerisure CGL policy contained an "other insurance" provision providing that Amerisure is primary except when the excess insurance provision applies.  Part (2) of the Excess Insurance provision applies as follows:

> This insurance is excess over:
>
> . . . (2) Any other primary insurance available to you [the insured] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you [the insured] **have been added as an additional insured by attachment of an endorsement**.[14]

*R. 66, Exh. A, Amerisure CGL Policy, bate no. 210 (emphasis added).*  Likewise, the Chubb CGL policy provides that it is primary, except when the excess provision applies. *R. 66, Exh.*

---

[13] In plaintiffs' Memorandum in Opposition to Amerisure's Motion for Summary Judgment, plaintiffs allege, and the parties do not dispute, that available insurance to plaintiffs will diminish from $17 million to $6 million if Amerisure is able to reform its insurance contract with Ulterra MWD. *R. 89, p. 2.*  Plaintiffs add that currently, plaintiff's injuries allegedly caused by the explosion are extensive, involving a fractured pelvis, humerus, lumbar vertebrae, fibular head and ribs, as well as injuries to his shoulder, elbow, scrotum and spinal cord. *Id.*  At the time of the accident Mr. Fruge was forty-three years of age and earning $72,000 per year as a driller. *Id.*  Plaintiffs' counsel represents that post-accident, Mr. Fruge is "totally and permanently disabled with past medical expenses nearing $200,000, and faces ongoing medical treatment, medication and expenses with no ongoing wages and potential future surgery looming." *Id.*

[14] Part (1) of the Excess Insurance provision applies in circumstances related to fire, tenant, aircraft or watercraft insurance, which is inapplicable to the present litigation.

*E, p. 39, Chubb CGL Policy, p. 23 of 34.*  The Chubb excess provision provides the following:

> This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:
>
>   . . .
>
> (D) that is insurance:
>   (1) provided to you by any person or organization working under contract or agreement for you; or
>   (2) **under which you are included as an insured**.

*Id. (emphasis added).*

Chubb correctly points out that Ulterra MWD is included as a named insured by the "Named Insured Endorsement" in the Amerisure policy, thus requiring a finding that Chubb be considered as providing CGL coverage in excess of that provided by the Amerisure CGL policy.  *R. 66, Exh. A, bate no. 050.*  Under the Chubb policy, Ulterra MWD is the named insured on the declarations page of the policy, and is not added as an "additional insured by an attachment of an endorsement" as required under the excess provision of the Amerisure policy.  *See R. 66, Exh. E, p. 23 of 34.*  Thus, the clear language of the policies require that the Amerisure CGL policy is primary and the Chubb CGL policy provides excess coverage for Ulterra MWD.  *Id.*

  *ii. Umbrella policies*

With respect to the umbrella policies, the "other insurance" clause in the Amerisure Umbrella policy provides, "This insurance is excess over and shall not contribute with any of the other insurance, whether primary, excess contingent or on any other basis." *R. 66, Exh.*

*B, Amerisure Umbrella policy, p. 11 of 16, "Other Insurance".* Similarly, the Chubb Umbrella policy provides that "[t]his insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis." *R. 66, Exh. F, Chubb Umbrella policy, p. 25 of 34.* Hence, these two umbrella policies are each excess over the Chubb and Amerisure CGL policies. *See American Intern. Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 258 (5th Cir.2003) (An "other insurance" "excess clause" provides that policy coverage will apply only as excess insurance over any other valid and collectible insurance). Further, both policies provide that they will pay only their share of the loss. *R. 66, Exh. B; F.* "[W]hen two [insurance] policies afford the same layer of coverage and both contain conflicting 'other insurance' clauses which are irreconcilable, the policies must share liability on a pro rata basis." *Samuels v. State Farm Mut. Auto. Ins., Co.*, 939 So.2d 1235, 1241 (2006) (citing *Graves v. Traders and General Ins. Co.*, 252 La. 709, 214 So.2d 116 (1968)).

The Umbrella policy issued by Amerisure has a $10,000,000.00 per occurrence limit, *R. 66, Exh. B*, and the Umbrella policy issued by Chubb has a $5,000,000.00 per occurrence limit. *Id. at Exh. F.* Under the clear language of the policies and the applicable jurisprudence, the Amerisure and Chubb Umbrella Policies are in excess to the Amerisure and Chubb CGL policies, in proportion to their limits, that is a 2:1 ratio, respectively.

Accordingly, coverage under the policies for the accident at issue in this case ranks as follows:

1. Primary policy - Amerisure CGL Policy #CPP2034223;

2. Excess policy - Chubb CGL Policy #7954-96-82

3. Amerisure Umbrella Policy #CU2026199 and Chubb Umbrella Policy #7954-96-83 require pro-rata division in proportion to policy limits of 2:1.

### *IV. CONCLUSION*

For the foregoing reasons, Chubb's Motion for Summary Judgment [Rec. Doc. 65] will be granted and Amerisure's Cross-Motion for Summary Judgment [Rec. Doc. 78] will be denied. Amerisure's Motion to Dismiss [Rec. Doc. 70] and Chubb's Motion to Strike [Rec. Doc. 71] will be denied as moot.